IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

```
                            )
UNITED STATES OF AMERICA,   )
                            )
        Plaintiff,          )
                            )
        vs.                 )    No. 10-20053
                            )
DONALD GIBBS,               )
                            )
        Defendant.          )
                            )
```

_____

REPORT AND RECOMMENDATION

_____

The defendant, Donald Gibbs, was indicted on one count of possessing a firearm as a convicted felon in violation of Title 18 U.S.C. § 922(g)(1) and on one count of possessing a firearm as an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3). Presently before the court is the motion of the defendant to suppress all evidence obtained pursuant to his arrest on December 10, 2009, and the subsequent search of the area around him at the time of his arrest. Specifically, the defendant moves to suppress the .40 caliber Smith and Wesson semi-automatic firearm seized at the time of his arrest which is the subject of both counts of the indictment. The motion was referred to the United States Magistrate Judge for a report and recommendation.

The court held an evidentiary hearing on June 4, 2010. This hearing was continued until June 16, 2010. During the initial

hearing, the government called Officer Vornell Montgomery of the Memphis Police Department ("MPD") as a witness.  The hearing was continued because Daryl Gibbs, the defendant's brother and his only witness, did not appear in court.  At the subsequent hearing, the defendant chose not to call Daryl Gibbs.  Instead, the government called Daryl Gibbs as a continuation of their case in chief.  The defendant did not put on any proof.  Both parties filed supplemental memoranda of law addressing the narrow issues raised by the testimony deduced at the hearing.  For the reasons stated below, it is recommended that the defendant's motion be denied.

## I.  PROPOSED FINDINGS OF FACT

On July 20, 2009, a General Sessions Criminal Court Judge issued a bench warrant for the arrest of Donald Gibbs for failure to appear in court on a firearm charge. (Ex. 1.)

Officer Vornell Montgomery testified as follows:  On December 10, 2009, an anonymous caller contacted the Memphis Police Department ("MPD"), Raines Station and advised that the defendant could be found at 4814 Tulane Street in Memphis, TN.  The front desk operator at the Raines Station then contacted Officer Montgomery via cell phone and informed him of the call.  Pursuant to this information, Officer Montgomery and his partner, Officer Fisher, proceeded to 4814 Tulane Street.  Before arriving at the location, Officer Montgomery had a second conversation with the Raines Station front desk operator, in which the operator informed

Officer Montgomery that the defendant's brother, Daryl Gibbs, would meet officers at the location and take them inside where the defendant was allegedly sleeping.

At approximately 3:10 p.m., the officers arrived at 4814 Tulane Street where they saw a man, whom they later identified as Daryl Gibbs, standing at the door beckoning for the officers to come inside. After entering the home, Daryl Gibbs took the officers directly to the room where the defendant was sleeping. Officer Montgomery testified that a sheet was hanging on the doorway to the room. Daryl Gibbs entered the room first and turned on the light. The defendant sat up in bed, a brief conversation ensued, after which Daryl Gibbs stepped back, allowing the officers to enter the room to arrest the defendant. The officers approached the defendant, identified themselves as MPD officers and told the defendant to show his hands. The officers immediately handcuffed the defendant and sat him on the floor about four feet away from the bed.

Once the defendant was in custody, Officer Montgomery noticed what looked like a gun barrel in plain view sticking out from under the pillow where the defendant had been sleeping. The officers seized the gun, a loaded .40 caliber Smith and Wesson semi-automatic pistol. Officer Montgomery testified that the pillow did not have to be moved to see the weapon and that he seized the weapon for safety concerns. The officers ran a check on the weapon

3

which revealed it to be stolen. The officers did not search any other area of the house. Officer Montgomery acknowledged that on the day of the arrest, he did not know who owned the house at 4814 Tulane Street or what Daryl Gibb's relationship was to the house.

At the continuation of the hearing on June 16, 2010, Daryl Gibbs testified that on the day of the arrest he and the defendant were living with his grandmother at 4814 Tulane Street. Daryl Gibbs testified that the officers asked him to identify himself upon their arrival, then asked him if the defendant was in the house, to which he replied in the affirmative and directed the officers inside the house to where his brother was sleeping. During his testimony, Daryl Gibbs admitted that he had prior convictions on his record for shoplifting, robbery, petty larceny, and theft.

On cross examination, Daryl Gibbs stated that he was the one who had placed the phone call to police. He admitted that his statement to the public defender's office that a female cousin had placed the anonymous phone call and advised the police where the defendant could be found was a lie. Additionally, Daryl Gibbs clarified that the house at 4814 Tulane Street belonged to his grandmother who is 93 years old but that he had lived there for at least twenty (20) years. Finally, Daryl Gibbs reiterated that the defendant's gun was located underneath the pillow where the

defendant had been sleeping and that he had seen the gun in the house on the day of the arrest.

The court finds the testimony of both the witnesses in this hearing to be credible. Officer Montgomery's testimony was consistent with the testimony of Daryl Gibbs as to the events surrounding the defendant's arrest and the location of the handgun. Furthermore, despite Daryl Gibbs's admission that the he gave a false statement to an investigator, he testified unequivocally at the hearing under oath that he had placed the call to the police, and the defendant failed to produce testimony showing otherwise. The court therefore accepts both Officer Montgomery's and Daryl Gibb's testimony as fact.

## II. PROPOSED CONCLUSIONS OF LAW

In his supplemental motion to suppress, the defendant admits that a valid arrest warrant existed at the time of his arrest. He contends, however, that despite this valid arrest warrant, his motion to suppress should be granted because the officers did not have probable cause to believe that he was in the house at 4814 Tulane Street. *See United States v. Gorman*, 314 F.3d 1105, 1113 (9th Cir. 2002) (holding that "an 'agent must have probable cause to believe that the person he is attempting to arrest, with or without a warrant, is in a particular building'")(quoting *United States v. Phillips*, 497 F.2d 1131, 1136 (9th Cir. 1974)). In the alternative, the defendant argues that if the court applies a

"reasonable belief" standard, the government failed to show that the officers had at least a reasonable belief that defendant could be found in the home.  *See United States v. Pruitt*, 458 F.3d 477 (6th Cir. 2006)(holding that "an arrest warrant is sufficient to enter a residence if the officers, by looking at common sense factors and evaluating the totality of the circumstances, establish a reasonable belief that the subject of the arrest warrant is within the residence at that time" and noting that its finding was consistent with the majority of other circuits to rule on the issue), *cert. denied* 549 U.S. 1283 (2007).  *But cf. United States v. Hardin*, 539 F.3d 404 (2008) (describing the holding in *Pruitt* as dicta and therefore not binding on subsequent panels), *reh'g and reh'g en banc denied*, 2009 U.S. App. LEXIS 10971 (Jan. 16, 2009).

In response, the government argues that the court should apply the lesser "reasonable belief" standard adopted by the Sixth Circuit in *Pruitt* and that the evidence shows that the officers here had sufficient information to meet the "reasonable belief" standard.

A.   <u>The Standard Governing Officers' Entry into a Residence to Execute an Arrest Warrant</u>

The critical issue in this motion is whether an officer must have probable cause or a "reasonable belief" to enter a residence to execute an arrest warrant.  The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses,

papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "The Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 349 (1967). Additionally, rights guaranteed under the Fourth Amendment are "personal rights which . . . may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978). Therefore, when assessing a challenge to a search or seizure on Fourth Amendment grounds, courts must determine who is bringing the challenge and apply the amendment's protections to each person individually. *See Georgia v. Randolph*, 547 U.S. 103, 120 (2006) (finding a warrantless search of a shared dwelling reasonable as to the consenting occupant but not as to the non-consenting occupant).

The Supreme Court has not directly addressed the specific issue involved in this case, i.e., the Fourth Amendment privacy rights of an individual named in a valid arrest warrant who is located within the dwelling of a third party who is not the subject of the arrest warrant. The Supreme Court has, however, addressed two similar scenarios *in Payton v. New York*, 445 U.S. 573 (1980) and *Steagald v. United States*, 451 U.S. 204 (1981), neither of which are directly on point but both of which are instructive. In *Payton*, faced with a challenge by a defendant who was the subject of the arrest warrant, the Supreme Court held "[a]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which a suspect lives when there

is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. at 603.  In *Steagald*, officers entered the residence of a third person not named in the arrest warrant to execute the arrest warrant on the person named in the warrant, and the third person objected on Fourth Amendment grounds.  The Supreme Court held in *Steagald*, that officers in possession of a valid *arrest* warrant may not enter the dwelling of a third party whose name does not appear on the warrant for the purposes of conducting a search absent a valid *search* warrant, the third party's consent, or exigent circumstances.  *Id.*, 451 U.S. at 205-06.

In the instant case, the arrest warrant was for the defendant and the defendant is raising the Fourth Amendment violations. Because a third person is not raising the objections, *Steagald* is not controlling. See *United States v. Buckner*, 717 F.2d 297, 300 (6th Cir. 1983)("The fact that the defendant was the person named on the arrest warrant mandates application of *Payton* rather than *Steagald*.").  If the defendant was residing at 4814 Tulane Street, then *Payton* would control.[1]  If the defendant was merely a guest at 4814 Tulane Street, then *Payton* is not controlling, and the Supreme Court has not ruled directly on this situation.

---

[1]  Daryl Gibbs testified that the defendant was living at 4814 Tulane Street but the government did not argue that 4814 Tulane Street was the defendant's residence.

8

Although the Sixth Circuit has previously addressed the precise question at issue here, Sixth Circuit precedent is not clear as to whether a probable cause or reasonable belief standard should be applied. In 2006, in *United States v. Pruitt*, a two-judge majority held that "an arrest warrant is sufficient to enter a residence if the officers, by looking at common sense factors and evaluating the totality of the circumstances, establish a *reasonable belief* that the subject of the arrest warrant is within the residence at that time." *Id.*, 458 F.3d at 483 (emphasis added). The *Pruitt* majority reasoned that the Supreme Court's use of the term "reason to believe" and not "probable cause" in *Payton* signified that the court meant to delineate "two entirely different inquiries" and was not using the terms interchangeably. *Id.* at 484.

In *Pruitt*, law enforcement officers were attempting to execute an arrest warrant for a defendant who had violated his parole. *Pruitt*, 458 F.3d at 478. The police received an anonymous phone call from a female stating a specific address at which the defendant could be found, that she had seen the defendant there that day, and that the defendant possessed both drugs and a firearm. *Id.* at 478-79. Officers checking out the address given by the anonymous caller observed a man enter and exit the home located there before speeding away, causing the police to stop his vehicle. *Id.* at 479. The man identified the defendant from a

photograph shown to him by police and stated that the defendant was inside the home and had just refused to sell him narcotics on credit. *Id.* Using this information, the officers obtained a search warrant for the residence using a form affidavit and the testimony of the detective who had sworn to the affidavit.[2]

After obtaining the warrant, law enforcement officials returned to the residence and entered the home to find the defendant hiding in a kitchen closet. *Id.* As part of a protective sweep of the premises, officers observed, in plain view, crack cocaine, marijuana, and a loaded .25 caliber pistol, all of which the defendant admitted belonged to him. *Id.* After the defendant refused to consent to a search of the full residence because "the place wasn't his," officers approached the municipal court and obtained a new search warrant for the residence based on the evidence seized during the search incident to arrest. *Id.*

---

[2]      The form affidavit used by the officers contained a section which required the affiant detective to state the facts justifying the issuance of the warrant which the detective left blank. *Pruitt*, 458 F.3d at 479. In addition, no transcript was made of the detective's sworn statement before the municipal court that issued the warrant, in contravention of the mandates of Federal Rule of Criminal Procedure 41(d)(2)(C). On appeal, the Sixth Circuit affirmed the district court's invalidation of the search warrant on the grounds that proper procedure was not followed and held that the good faith exception established by *United States v. Leon*, 468 U.S. 897, 922 (1984), did not apply because the 'bare bones' affidavit could not support "a reasonable belief on the part of law enforcement officials that a warrant is valid." *Pruitt*, 458 F.3d at 481 (citing *Leon*, 468 U.S. at 915).

In determining that officers did not violate the defendant's Fourth Amendment rights by entering the home, Judge McKeague, writing for the *Pruitt* majority,[3] stated specifically:

> [T]he Government argues that while a circuit-split does exist, a majority of the circuits that have ruled on the issue have determined that a lesser reasonable belief standard, and not probable cause, is sufficient to allow officers to enter a residence to enforce an arrest warrant, and that the officers here had adequate information in this case to meet this standard. We agree.
> Reasonable belief is established by looking at common sense factors and evaluating the totality of the circumstances. . . .
> In this case, the [officers] evaluated the totality of the circumstances, *and formulated a reasonable belief that Pruitt was present at 2652 Meister Road*. The team relied on the anonymous tip given to Pruitt's parole officer, Garcia's identification of [Pruitt] in a photograph, and his assertion that [Pruitt] was in the residence at that time selling drugs. As in *McKinney*, the [officers] considered Pruitt's background information, including his drug dealing past and his street name, *to develop a reasonable belief that Pruitt was in the residence*.
> Our decision is consistent with the majority of our sister circuits who have ruled that consideration of common sense factors and the totality of the circumstances is sufficient to formulate a reasonable belief that a suspect is on the premises. . . . Accordingly, we hold that an arrest warrant is sufficient to enter a residence if the officers, by looking at common sense factors and evaluating the totality of the circumstances, *establish a reasonable belief that the subject of the arrest warrant is within the residence at that time*.

*Pruitt*, 458 F.3d at 482-83 (emphasis added)(internal citations omitted).

---

[3]   Judge Siler joined Judge McKeague.

11

Judge Clay concurred in judgment but disagreed with the two-judge majority's determination that the Supreme Court had adopted a reasonable belief standard that was a lesser standard than probable cause. Judge Clay took the position that "reason to believe' was the functional equivalent of probable cause and determined that the officers had probable cause to believe the defendant was in the house. *See Pruitt*, 458 F.3d at 489 (Clay, J. concurring) ("[T]he evidence before the district court established that the officers had probable cause to believe Defendant was present at the residence when they entered . . . .").

Although the majority did not affirmatively negate the concurring opinion's factual determination, Judge Clay was the only judge to assert the existence of probable cause. Judges McKeague and Siler, the two judges constituting the majority, found only the existence of a reasonable belief and determined that to be sufficient to justify the officers' entry. The *Pruitt* majority dealt squarely and succinctly with the concurring judge's reasoning, stating, "Our holding contrasts with that of the Ninth Circuit, which alone has ruled that reasonable belief is the equivalent of probable cause in determining whether a suspect is within the residence. The concurring opinion suggests that we should adopt this ruling. . . . We decline to adopt this view . . . ." *Id.* at 483.

In rejecting the arguments of Judge Clay's concurrence, the majority cited the following passage from *Maryland v. Buie*, 494 U.S. 325 (1990):

> [B]y requiring a protective sweep to be justified by *probable cause* to believe that a serious and demonstrable potentiality for danger existed, the Court of Appeals of Maryland applied an unnecessarily strict Fourth Amendment standard.   The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a *reasonable belief* based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Pruitt*, 458 F.3d at 484 (quoting *Buie*, 494 U.S. at 337) (alterations in original).  Using *Buie* as an example, the court explained that had the Supreme Court intended to require probable cause to enter a residence, the court would have stated so expressly.  In addition, the majority noted that its decision was in line with the majority of its sister circuits which had also adopted the lesser 'reasonable belief' standard.  *See id.* at 483-84 (citing cases).

More recently, in *United States v. Hardin*, 539 F.3d 404 (2008), rehearing and rehearing *en banc* denied, January 16, 2009, a different Sixth Circuit panel addressed a factual scenario similar to that in *Pruitt,* but dismissed the *Pruitt* majority's holding concerning what constitutes a "reason to believe" as dicta on the basis that the ruling was not essential to the resolution of the case.  *Id.*, 539 F.3d at 412-416.  Writing for the two-judge

majority in *Hardin*, Judge Moore explained that *the Pruitt* holding was not essential because the facts of the case supported a finding of probable cause that the defendant would be found in the residence to be searched. *Hardin*, 539 F.3d at 413, 414. Judge Moore reasoned that because the *Pruitt* majority had not affirmatively negated the portion of Judge Clay's concurrence finding that probable cause existed, it was unnecessary for the court to determine whether the lesser, reasonable belief standard had been met. *Id.* The *Hardin* majority went on to find that the case before it also did not require a decision as to the necessary quantum of proof because its facts supported neither a reasonable belief nor probable cause. *Id.*, at 416, 420. Despite holding that what constitutes a "reason to believe" remained an "open question" in the Sixth Circuit, Judge Moore nevertheless expressed her preference for the "probable cause" standard adopted by the Ninth Circuit in *Gorman* and espoused by Judge Clay's concurrence in *Pruitt*. *Id.* at 416 n.6.

The dissent in *Hardin* claimed the two-judge majority had "ignor[ed] *Pruitt's* clear reasoning and plain language, and instead conduct[ed] a *de novo* reconsideration of *Pruitt's* facts in an effort to satisfy its preferred (alternative) version of the law . . . ." *Hardin*, 539 F.3d at 427 (Batchelder, J. dissenting). The dissent pointed out that in *Pruitt*:

14

> [The Sixth Circuit] specifically considered "whether
> officers may rely on an arrest warrant, coupled with the
> reasonable belief that the subject of the warrant is
> within a third-party's residence, to enter that residence
> to execute the warrant"; and whether "a lesser reasonable
> belief standard, and not probable cause, is sufficient to
> allow officers to enter [the] residence to enforce [the]
> arrest warrant." [The Sixth Circuit] answered both in the
> affirmative.

*Id.*, at 436 (Batchelder, J. dissenting) (quoting *Pruitt*, 458 F.3d
at 481-82). The dissenting judge agreed that a finding of probable
cause by the *Pruitt* majority would have rendered its determination
as to the proof requirement mere dicta, but remained adamant that
the *Pruitt* majority had made no such finding. *See id.* at 439 n.5
(Batchelder, J. dissenting) ("[E]ven if the majority were correct
that the facts of *Pruitt* satisfy probable cause -- *a finding that
the Pruitt majority clearly did not make* -- then I would agree that
the *Pruitt* majority could have . . . deferred decision on the
probable-cause vs. reason-to-believe standard.") (emphasis added).
Judge Batchelder argued that the *Hardin* majority's reading of
*Pruitt* created a dangerous precedent for future holdings of Sixth
Circuit panels because it stripped *Pruitt* of any holding,
essentially rendering the opinion advisory, and instead adopted the
concurrence's assessment of the facts as controlling. *Id.* at 440.

In sum, the *Hardin* majority concluded "that whether *Payton*
involves a probable-cause standard or a lesser reasonable-belief
standard remains an open question in our circuit, to be settled in

an appropriate case." *Id*. at 426.  Thus, this court is free to determine which standard is appropriate.

This court finds that the *Pruitt* lesser "reasonable belief" standard is well supported by case law and is the proper standard to apply.  As the *Pruitt* majority noted, with the exception of the Ninth Circuit, every circuit to rule on the issue has agreed that the lesser "reasonable belief" standard is sufficient to protect the arrestee's Fourth Amendment rights.  *See United States v. Thomas*, 429 F.3d 282, 286 (D.C. Cir. 2005); *Valdez v. McPheters*, 172 F.3d 1220, 1226 (10th Cir. 1999); *United States v. Route*, 104 F.3d 59, 62-63 (5th Cir. 1997); *United States v. Risse*, 83 F.3d 212, 216-17 (8th Cir. 1996); *United States v. Lauter*, 57 F.3d 1236, 1248 (3d. Cir. 1995); *United States v. Magluta*, 44 F.3d 1530, 1535 (11th Cir. 1995)).  *But cf.*, *United States v. Gorman*, 314 F.3d 1105, 1111 (9th Cir. 2002) ("the 'reason to believe' or reasonable belief standard of *Payton* . . . embodies the same standard of reasonableness inherent in probable cause.").

In addition, the *Pruitt* court's reading of *Payton* is supported by prior Sixth Circuit cases that have addressed this issue, albeit in dicta, in some form.  In *United States v. Wickizer*, 633 F.2d 900 (6th Cir. 1980), a case decided after *Payton* but before *Steagald*, the Sixth Circuit held that law enforcement possessing a valid warrant need only possess a "reason to believe" a suspect is located in a dwelling in order to enter to execute a warrant.  *Id.*

at 902.   In *Buckner*, a case which was decided on standing, the
Sixth Circuit court explained that under the Supreme Court's rule
in *Payton*, police could enter the subject of an arrest warrant's
own home with a valid warrant and a mere "reason to believe" that
the subject was there.   *Buckner*, 717 F.2d at 300.   The *Buckner*
court was careful to differentiate the scenario before it — a case
in which the subject of an arrest warrant was challenging the
authority of law enforcement to enter a third party's home to
execute that warrant — from the scenario addressed by the Supreme
Court in *Steagald* — a case in which a homeowner not named in an
arrest warrant was challenging the authority of law enforcement to
enter his home to search for the subject of an arrest warrant.[4]
*Id*.   In adopting the *Payton* standard as controlling, the *Buckner*
court stated that "It would be illogical to afford the defendant
any greater protection in the home of a third party than he was
entitled to in his own home."   *Id*.

To require law enforcement to demonstrate probable cause, the
same quantum of proof required for a warrant to issue, to enter a
third party's home for the purpose of executing an arrest warrant
would add an unnecessary burden to officers attempting to apprehend
fugitives from the law.   Moreover, applying the lesser standard in

---

[4]      The court notes that neither of the residents of 4814
Tulane Street (Daryl Gibbs and his grandmother) have challenged the
officer's search of the area of the home incident to the
defendant's arrest.

this situation does nothing to reduce the affect of *Steagald*, which still protects the Fourth Amendment rights of a third party homeowner to assert the warrant requirement when challenging a search of his home.   Therefore, because the "reasonable belief" standard strikes the proper balance between the interests of the public in bringing fugitives to justice and the individual's right to be free from unreasonable searches and seizures in the home, the court finds the lesser reasonable belief standard, and not probable cause, should govern the inquiry here.

B.   Reasonable Belief that Defendant Was Inside the Home

As determined by the court in *Pruitt*, a "reasonable belief is established by looking at common sense factors and evaluating the totality of the circumstances." *Pruitt*, 458 F.2d at 482.   It is not necessary for officers to actually observe the suspect on the premises to establish a reasonable belief that he is present. *McPheters*, 172 F.3d at 1226.   Rather, to establish a reasonable belief, courts applying common sense and assessing the totality of the circumstances have relied on such indicators as tips from informants, *Lauter*, 57 F.3d at 215; *Wickizer*, 633 F.2d at 901, surveillance of the residence, *Edmonds*, 52 F.3d at 1248, and reports of the defendant's presence along with officer suspicion, *McPheters*, 172 F.3d at 1226-27.

Here, MPD had received an anonymous phone call informing officers of the defendant's exact whereabouts.   The caller, who

18

identified himself as the defendant's brother Daryl Gibbs in a subsequent phone call, gave a specific address where the defendant could be found inside sleeping and also informed them that he would be outside of the home waiting for officers to arrive. When the officers arrived at 4814 Tulane Street, Daryl Gibbs was standing outside of the home "beckoning" the officers toward the inside of the home. The officers asked Daryl Gibbs if he was Donald Gibbs whereupon Daryl Gibbs advised the officers of his name and that Donald Gibbs was inside the house at that very moment. Under a common sense analysis of the totality of the circumstances as they appeared to the officers at the time they entered the home at 4814 Tulane Street, the evidence establishes that the officers possessed a reasonable belief that defendant would be found inside the home. Therefore, the court finds that the officers' entry into the residence did not violate the defendant's rights under the Fourth Amendment.

C.   Suppression of the Gun

Having determined that the officers did not violate the defendant's Fourth Amendment rights by entering the residence at 4814 Tulane Street to arrest him, the court can find no grounds on which to suppress the handgun seized during the course of his arrest. The Fourth Amendment permits officers to perform a limited search incident to arrest. *Buie*, 494 U.S. at 327. Officers may conduct a limited search of the immediately adjoining areas

surrounding the place of arrest without probable cause or reasonable suspicion. *Id*. A search incident to arrest is a reasonable search because officers must be sure that suspects they deal with are not armed or able to gain control of a weapon that could be used to assault an officer or escape. *Id*. at 333; *see also United States v. Robinson*, 414 U.S. 218, 226 (1973). A search for weapons is a vital purpose of the search incident to arrest doctrine and is important to the officers' personal safety. *See United States v. Murrie*, 534 F.2d 695, 697 (6th Cir. 1976). In addition to their authority to conduct a search incident to arrest, officers may seize any item in plain view if they are lawfully present in the area and the incriminating nature of the item is immediately apparent. *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971).

During the arrest of the defendant, officers spotted the barrel of the gun, in plain view, protruding from under the pillow on which the defendant had been sleeping prior to his arrest. Given the location of the gun in relation to the defendant at the time of his arrest, the court finds the officers were justified in seizing the weapon under both the search incident to arrest and the plain view doctrine. The defendant could have conceivably gained control of the weapon, and the officers were lawfully present in the room when they observed the barrel of the gun. Accordingly, the court recommends denying the defendant's motion to suppress.

III.   RECOMMENDATION

For the reasons expressed above, it is recommended that the defendant's motion to suppress be denied.

Respectfully submitted this 21st day of July, 2010.


s/ Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS OR EXCEPTION TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT.   28 U.S.C. § 636(b)(1)(C).   FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.

ANY PARTY OBJECTING TO THIS REPORT MUST MAKE ARRANGEMENTS FOR A TRANSCRIPT OF THE HEARING TO BE PREPARED.