```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE WESTERN DISTRICT OF TENNESSEE
                             WESTERN DIVISION
```

|                              |   |                       |
|------------------------------|---|-----------------------|
| UNITED STATES OF AMERICA,    | ) |                       |
|                              | ) |                       |
|    Plaintiff, | ) |                       |
|                              | ) |                       |
| v.                           | ) | No. 2:10-cr-20053-JPM |
|                              | ) |                       |
| DONALD GIBBS,                | ) |                       |
|                              | ) |                       |
|    Defendant. | ) |                       |
|                              | ) |                       |

**ORDER ADOPTING IN PART AND OVERRULING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant Donald Gibbs's ("Defendant") Motion to Suppress Evidence and Memorandum in Support Thereof (D.E. 17), filed April 12, 2010. ("Mot. to Supp.")

The Court referred the Motion to the Magistrate Judge for Report and Recommendation. (D.E. 18.) On April 26, 2010, the Government filed a response in opposition. ("Resp. in Opp. to Mot. to Supp.") (D.E. 20.) An evidentiary hearing was held before the Magistrate Judge on June 4, 2010 at which the Government put on evidence. (See June 4, 2010 Supp. Hr'g Tr. ("June 4 Tr.") (D.E. 25).) At the request of counsel for Defendant, the hearing was continued until June 16, 2010 because Daryl Gibbs, Defendant's brother and only witness, did not appear.

On June 20, 2010, Defendant filed a Motion to Supplement the Motion to Suppress Evidence, clarifying issues raised by the testimony adduced at the June 6 hearing. ("Mot. to Supplement") (D.E. 26.) The Court referred the motion to the Magistrate Judge on June 14, 2010. (D.E. 27.) The Government filed a supplemental response on June 14, 2010. ("Supplemental Resp.") (D.E. 28.)

At the subsequent hearing on June 16, 2010, the Court orally granted Defendant's Motion to Supplement. (June 16, 2010 Supp. Hr'g Tr. ("June 16 Tr.") (D.E. 30) 10.) The Court also granted the Government's oral motion to reopen its proof. The Government called Daryl Gibbs as a continuation of its case in chief. Defendant chose not to call Daryl Gibbs and did not put on any proof.

The Report and Recommendation ("Rep. & Rec.") was received on July 21, 2010. (D.E. 31.) The Magistrate Judge recommended that the Court deny Defendant's Motion to Suppress. (Rep. & Rec. 21.) On July 29, 2010, Defendant filed his Objections to the Report and Recommendation. ("Def.'s Objections") (D.E. 32.) The Government replied in opposition to Defendant's objections on August 13, 2010. ("Resp. to Objections") (D.E. 35.)

The Court held a hearing on Defendant's objections on November 10, 2010, at which the proof was reopened and the Government called Officer Lamon Cortez Fisher to testify. (Nov.

10, 2010 Hr'g on Objections to the Rep. & Rec. Tr. ("Nov. 10 Tr.") 11.)

After de novo review, the Court having considered the arguments of the defense and the Government, the Court ADOPTS IN PART and OVERRULES IN PART the Magistrate Judge's Report and Recommendation and DENIES Defendant's Motion to Suppress.

**I. BACKGROUND**

Defendant was indicted on one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1) and one count of possessing a firearm as an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3). (Indictment (D.E. 1).) In the instant motion, Defendant seeks to suppress all evidence obtained pursuant to his arrest on December 10, 2009, and the subsequent search of the area around him at the time of his arrest. (Mot. to Supp. 1.) Specifically, Defendant moves to suppress the .40 caliber Smith and Wesson semi-automatic firearm seized at the time of his arrest which is the subject of both counts of the indictment. (Id.; Indictment.)

On July 20, 2009, a General Sessions Criminal Court Judge issued a bench warrant for the arrest of Donald Gibbs for failure to appear in court on a firearm charge. (June 16 Tr. Ex. 1, General Sessions Bench Warrant for Donald Gibbs.)

On December 10, 2009, an anonymous caller contacted the Memphis Police Department ("MPD"), Raines Station, and advised

that Defendant had an outstanding warrant and could be found at 4814 Tulane Street in Memphis, Tennessee. (June 3 Tr. 8-9, 14.) The front desk officer ("Raines Station Officer") then contacted Memphis Police Officer Vornell Montgomery ("Officer Montgomery") and informed him of the call. (Id. at 14.)

Officer Montgomery had a second conversation with the Raines Station Officer, during which he learned that the anonymous caller had identified himself as Daryl Gibbs ("Gibbs"), Defendant's brother.[1] (Id. at 9, 15; Nov. 10 Tr. 13.) The Raines Station Officer also informed Officer Montgomery that Gibbs would be waiting at 4214 Tulane Street to let the officers into the home and to take them to where Defendant was sleeping. (June 3 Tr. 9; Nov. 10 Tr. 13.)

Upon receiving the information, Officer Fisher verified the warrant on the MPD's "Station B" system which provided that it was an active, misdemeanor warrant. (Nov. 10 Tr. 13-14.) Officer Fisher then verified through his PDA device Defendant's picture, date of birth, Social Security number, the address, and the active warrant of Defendant. (Id. at 14.)

---

[1] In his testimony, Gibbs confirmed that he made the phone call to police, and that he told the MPD that he would be waiting to let the officers into the residence when they arrived. (June 6 Tr. 14.) Gibbs did not state that he made two phone calls. From the information received by the officers, however, it appears that two phone calls were placed by Gibbs. In the first call, Gibbs did not identify himself. In the second, Gibbs identified himself as Defendant's brother and stated that he would be waiting for the officers when they arrived. Regardless of the sequence of the calls, the Court finds that the officers were provided with the identity of the source of the information prior to arriving at 4214 Tulane.

4

Officers Montgomery and Fisher went to 4814 Tulane Street at approximately 3:10 p.m. (June 3 Tr. 9, 14.) When they arrived, the officers observed an adult male waiting for them.[2] The officers exited their vehicle and Officer Fisher approached the male. (Nov. 10 Tr. 15.) Officer Fisher inquired as to his identity, and the male identified himself as Gibbs. (Id.) Officer Fisher did not ask Gibbs for any identification, but knew that the male was not Defendant based on Defendant's photo. (Id. at 27.)

Gibbs informed Officer Fisher that Defendant had threatened to shoot Gibbs and that Defendant had a weapon. (Id. at 16.) Officer Fisher asked Gibbs if he lived at the residence and Gibbs stated that he did. (Id.)

Gibbs led the officers inside the house directly to the room where Defendant was sleeping. (June 3 Tr. 10; Nov. 10 Tr. 16.) A sheet was hanging on the doorway to the room. (June 3 Tr. 10.) Gibbs entered the room first, turned on the light, and had a brief conversation with Defendant. (June 3 Tr. 10-11; Nov. 10 Tr. 16.) Gibbs then came out of the room and the officers entered to arrest Defendant. (June 3 Tr. 11; Nov. 10 Tr. 16.)

---

[2] There is some discrepancy as to Gibbs's location when the officers arrived. Officer Montgomery testified that Gibbs was standing at the door beckoning for [them] to come inside." (Id. at 9.) Gibbs testified that he was coming around the side of the house when the officers arrived. (June 16 Tr. 14.) Officer Fisher testified that, when they arrived, he observed Gibbs come out of the residence and flag the officers down. (Nov. 10 Tr. 15.) The discrepancies are immaterial. The Court finds that Gibbs was waiting for the officers at the residence.

Officer Montgomery entered the room first. (Nov. 10 Tr. 16.) The officers announced that they were MPD officers and instructed Defendant to show them his hands. (June 3 Tr. 11; Nov. 10 Tr. 16.) Officer Montgomery holstered his weapon and went to the bed to detain Defendant at which time he observed a firearm on the bed, protruding from underneath the pillow where Defendant had been sleeping. (June 3 Tr. 11-12; Nov. 10 Tr. 16-17.) Officer Montgomery testified that the pillow did not have to be moved to see the weapon. (June 3 Tr. 11-12.)

As Officer Montgomery was getting Defendant off the bed, Officer Fisher heard Officer Montgomery yell out that Defendant had a weapon.[3] (Id. at 17, 28.) Officer Fisher then saw a firearm protruding from underneath a pillow on the bed. (Nov. 10 Tr. 17-18.) Officer Montgomery continued to detain Defendant, handcuffing Defendant and sitting him on the floor about four feet away from the bed. (June 3 Tr. 11-12; Nov. 10 Tr. 20.) While Officer Montgomery was detaining Defendant, Officer Fisher secured the weapon, a loaded .40 caliber Smith and Wesson semi-

---

[3] Officer Montgomery testified that he saw the firearm protruding from under a pillow on the bed after the officers had put Defendant in handcuffs and sat him on the floor. (June 6 Tr. 11-12.) When questioned as to the exact sequence of events, Officer Montgomery confirmed that he did not find the weapon until after he put the cuffs on Defendant. (Id. at 20-21.) Officer Fisher, on the other hand, testified that, while Officer Montgomery was detaining Defendant, he heard Officer Montgomery shout that Defendant had a weapon. (Nov. 10 Tr. 16-17.) Officer Fisher testified that he seized the weapon while Officer Montgomery was detaining Defendant. (Id.) Though there are inconsistencies as to the exact sequence of events, the Court finds that Officer Montgomery detained Defendant, while at the same time, Officer Fisher seized the weapon.

6

automatic pistol. (Nov. 10 Tr. 17, 28; June 3 Tr. 12.) Officer Montgomery testified that the officers seized the weapon for safety concerns. (June 3 Tr. 12.) The officers ran a check on the weapon which revealed it to be stolen.[4] (Id.)

**II. STANDARD OF REVIEW**

"A district judge must determine de novo any part of a magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C). After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations of the Magistrate Judge. 28 U.S.C. §636(b)(1)(C). The Court is not required to review those aspects of the report and recommendation to which no objection has been made. Thomas v. Arn, 474 U.S. 140, 150 (1985). The Court should adopt the findings and rulings of the Magistrate Judge to which a party files no specific objection. Id.; United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981).

**III. ANALYSIS**

The Magistrate Judge recommended that Defendant's Motion to Suppress be denied. (Rep. & Rec. 21.) In doing so, the

---

[4] The Court acknowledges that certain inconsistencies exist between the testimony of Officer Montgomery and that of Officer Fisher. After having the opportunity to observe the testimony of Officer Fisher, and after reviewing the Magistrate Judge's observations of the testimony of Officer Montgomery, the Court finds that the testimony of the Officers is nonetheless credible. The few inconsistencies that exist do not undermine the overall credibility of the officers, as their testimony was consistent in all material respects.

7

Magistrate Judge made the following conclusions of law: (1) the Pruitt lesser "reasonable belief" standard is the proper standard to apply to determine whether an officer is justified in entering a residence to execute a valid search warrant; (2) the officers' entry did not violate Defendant's rights under the Fourth Amendment because the evidence was sufficient to establish that the officers possessed a reasonable belief that Defendant would be found within the residence; and (3) there was no basis to suppress the firearm seized during the course of Defendant's arrest. (Id. at 16-20.)

### A. Defendant's Objections to Findings of Fact

Defendant offers one general objection to the Magistrate Judge's findings of fact. Defendant emphasizes that the Magistrate Judge did not give proper weight to the arresting officers' knowledge at the time of the search and arrest. (Def.'s Objections 2.) Defendant contends that the evidence adduced at the hearing established that the officers were on the scene as a result of an anonymous phone call and were directed by a person unknown to them into the house. (Id. at 2-3.) Defendant's objections are without merit.

While Officer Montgomery testified that the initial source of the information was an anonymous call, a subsequent call established the identity of the caller as Gibbs, Defendant's brother. (June 6 Tr. 15.) Both Officers Montgomery and Fisher

8

testified that they had been provided information that Gibbs would be waiting at 4214 Tulane to let the officers into the residence. (June 6 Tr. 15; Nov. 10 Tr. 13.) Therefore, the officers knew, prior to arriving at 4214 Tulane, that Gibbs, Defendant's brother, was the source of the information.

Furthermore, Officer Fisher testified that he "went up to the door and had a brief conversation with Mr. Daryl Gibbs" upon arriving at the residence. (Nov. 10 Tr. 15.) In that conversation, "Gibbs advised that he was Mr. Daryl Gibbs." (Id.) Officer Fisher also learned that Gibbs was currently living at the residence. (Id. at 16.) In his testimony, Daryl Gibbs corroborated Officer Fisher's testimony, stating that the officers asked him to identify himself upon their arrival. (June 6 Tr. 14-15.) Though Officer Montgomery testified that he identified the man waiting for them as Gibbs after he entered the residence, the Court finds the discrepancy immaterial. The officers could not, and did not, act in concert at all times during the arrest and seizure.[5] Moreover, based on the Magistrate Judge's observations of Gibbs, she credited his testimony and found that the officers had sufficiently identified Gibbs prior

---

[5] The testimony of Officer Fisher clarified the duties of each officer throughout the arrest and seizure. Officer Montgomery received the information from the Raines Station Officer on the possible warrant pickup. Officer Fisher verified the warrant on the Station B system. When the officers arrived, Officer Fisher confirmed that the individual waiting for them was Gibbs. When the officers went into the room to arrest Defendant, Officer Montgomery entered first and detained Defendant. At the same time, Officer Fisher secured the weapon found on the bed.

9

to entering the residence. (Rep. & Rec. 18-19.) Accordingly, the Court overrules Defendant's objection.[6]

**B. Defendant's Objections to Conclusions of Law**

Defendant raises three objections to the Magistrate Judge's proposed conclusions of law: (1) The proper standard to apply here is probable cause, not the lesser reasonable belief standard; (2) Regardless of which standard controls, neither is met because the evidence known to the officers at the time of entry was insufficient to establish a reasonable belief that Defendant would be found within the residence; and (3) The seizure of the firearm was not justified under the plain view doctrine nor the search incident to arrest exception because there was no reasonable threat to the officers' safety. (Def.'s Objections 2-3.) The Court will address each objection in turn.

**1. The Standard Governing Officers' Entry into a Residence to Execute an Arrest Warrant**

The critical issue in this motion is whether an officer must have probable cause or a "reasonable belief" that the subject of a valid arrest warrant is within to enter a residence to execute an arrest warrant. This implicates the Fourth Amendment privacy rights of an individual named in a valid

---

[6] As noted above, the Court held a hearing and reopened that proof after the Magistrate Judge filed the Rep. & Rec. Certain factual issues were clarified by the testimony of Officer Fisher at that hearing. Thus, to the extent that there are conflicting factual findings between this Order and the Rep. & Rec., the Court overrules the Rep. & Rec.

10

arrest warrant who is located within the dwelling of a third party and who is not the subject of the arrest warrant.

Defendant does not object to the Magistrate Judge's summary of the current state of the law on this issue. (Def.'s Objections 1 ("The report and recommendation . . . provides an excellent summary of the present state of the law concerning the issues to be addressed in the Motion to Suppress").) Accordingly, the Court incorporates by reference that discussion of the law. (Rep. & Rec. 6-16.)

Defendant objects to the Magistrate Judge's conclusion that "the Pruitt lesser 'reasonable belief' standard is the proper standard to apply." (Rep. & Rec. 16.) Defendant argues that the Court should apply the "probable cause" standard adopted by the Ninth Circuit in United States v. Gorman, 314 F.3d 1105, 1111 (9th Cir. 2002). (Mot. to Supplement 3; Def.'s Objections 2.) The Government counters that the Court should adopt the Magistrate Judge's conclusion that the "reasonable belief" standard from Pruitt controls the inquiry. (Supplemental Resp. 2-3; Resp. to Objections 4-5.)

For the following reasons, the Court OVERRULES the Magistrate Judge's conclusion of law that the Pruitt lesser reasonable belief standard should govern the inquiry. The Court, instead, declines to decide which standard applies.

11

As discussed in the Rep. & Rec., "whether Payton involves a probable-cause standard or a lesser reasonable-belief standard remains an open question in our circuit, to be settled in an appropriate case." United States v. Hardin, 539 F.3d 404, 426 (6th Cir. 2007). In United States v. Pruitt, 458 F.3d 477 (6th Cir. 2006), the Sixth Circuit held that "an arrest warrant is sufficient to enter a residence if the officers, by looking at common sense factors and evaluating the totality of the circumstances, establish a reasonable belief that the subject of the arrest warrant is within the residence at that time." Id. at 484. In United States v. Hardin, however, the majority dismissed Pruitt's holding as dicta on the basis that it was not essential to the resolution of the case because the evidence was "sufficient to satisfy *both* a probable-cause standard *and* a reason-to-believe standard." 539 F.3d at 415.

Subsequent Sixth Circuit opinions have used both the "reason to believe" standard and the probable cause standard. The following year in United States v. Stanley, the Sixth Circuit held that Payton and Pruitt "require [ ] at a minimum that the officers have a reasonable belief that the subject of the arrest warrant is within the residence at that time." 351 Fed. App'x 69, 74 (6th Cir. 2009) (citing Pruitt, 458 F.3d at 483) (internal quotation marks and emphasis omitted).

Changing course in United States v. Collins, the Sixth Circuit cited Hardin and stated that "it is well-established that law enforcement officers have the authority to enter a residence in order to execute an arrest warrant if there is *probable cause* to believe that the person named in the warrant is inside." 359 Fed. App'x 639, 641 (6th Cir. 2010) (emphasis added). A few months later, the Sixth Circuit addressed the issue and concluded that the appropriate standard to apply "when law enforcement must enter a third party's house to execute an arrest warrant" is "an open question in our circuit." United States v. Block, 378 Fed. App'x 547, 550 (6th Cir. 2010) (citing Hardin, 539 F.3d at 426). Similar to the majority in Hardin, the Block court declined to decide which standard applies because the agents in that case had sufficient evidence to form either a reasonable belief or probable cause to believe the defendant was present in the apartment. Id.

Lacking a clear statement from the Sixth Circuit, the Court finds that the *minimum* showing that must be made is that the officers have a reasonable belief that the subject of the arrest warrant is within the residence at that time. See Stanley, 351 Fed. App'x at 74. As explained further below, the officers here had sufficient evidence to form either a reasonable belief or probable cause to believe that the Defendant was present within the home at 4214 Tulane. Accordingly, the Court declines to

13

decide which standard applies. This portion of the Rep. & Rec. is hereby OVERRULED.

### 2. Probable Cause that Defendant Was Inside the Home

Defendant objects to the Magistrate Judge's conclusion that there was sufficient evidence to establish that the officers had a reasonable belief Defendant was present within 4814 Tulane. Defendant asserts that the evidence is insufficient to establish the officers' reasonable belief because they were on the scene as the result of an anonymous phone call, they were directed by a person unknown to them to enter the house, and they had no knowledge of that person's relationship to the house.[7] (Id. at 3.) Defendant contends that, regardless of whether the Court applies the "reasonable belief" standard or the probable cause standard, the evidence is insufficient to meet either standard. (Def.'s Objections 2-3.)

The Government relies on the Magistrate's proposed conclusions of law and counters that applying the proper "reasonable belief" standard, the evidence established that the officers had a reasonable belief that Defendant was within the residence. (Resp. to Objections 5.)

The Court finds that the officers had sufficient evidence to establish the higher standard of probable cause to believe

---

[7] The Court rejected this argument as to the information known to the officers at the time of entry on pages 8 and 9 of this Order.

that Defendant was within the residence. The officers had information from Gibbs, a relative of the Defendant and someone with firsthand knowledge as to the Defendant's whereabouts at the time of the call. See Collins, 359 Fed. App'x at 641 (holding that the officers had probable cause to believe the defendant was inside the apartment where defendant's girlfriend answered the door, indicated to police that defendant was inside, and offered to bring defendant out to the officers). Though the original information provided to the officers was that the caller was anonymous, a subsequent phone call established the informant's identity as Gibbs. The officers' information was corroborated by Gibbs's presence outside the residence, waiting on the officers when they arrived. Gibbs identified himself and informed Officer Fisher that he currently resided at 4214 Tulane and that Defendant was inside at that very moment. Importantly, the officers had a face-to-face interaction with Gibbs, the source of their information, prior to entering the residence. United States v. Gay, 240 F.3d 1222, 1224 (10th Cir. 2001) ("[A] face-to-face informant must, as a general matter, be thought more reliable than an anonymous telephone tipster, for the former runs the greater risk that he may be held accountable if his information proves false.").

Therefore, under a common sense analysis of the facts and circumstances as they appeared to the officers at the time they

15

entered the home at 4214 Tulane Street, the evidence establishes the officers had more than a mere suspicion or belief that the Defendant was at 4214 Tulane. See Harris v. Bornhorst, 513 F.3d 503, 511 (6th Cir. 2008). They had probable cause to believe that the Defendant was inside. See Beck v. Ohio, 379 U.S. 89, 91 (1964) (In the context of a grounds for a warrantless arrest, probable cause is present when, at the time of arrest, the "facts and circumstances within [the officers'] knowledge and of which they have reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense."); see also Harris 513 F.3d at 511 ("A finding of probable cause does not require evidence that is completely convincing . . . ; all that is required is that the evidence be sufficient to lead a reasonable officer to conclude that the arrestee has committed or is committing a crime.").

Accordingly, the Court concludes that the officers' entry into the residence did not violate Defendant's rights under the Fourth Amendment. To the extent that the Magistrate Judge's conclusion was based on a finding that the evidence established the officer's reasonable belief, the Rep. & Rec. is OVERRULED.

### 3. Suppression of the Firearm

Finally, Defendant objects to the Magistrate Judge's conclusion that suppression of the firearm was not warranted

16

because the officers were justified in seizing the weapon under both the search incident to arrest exception and the plain view exception. (Rep. & Rec. 20.) Defendant argues that neither theory of admissibility withstands scrutiny. He contends that there was no reasonable threat to the officers' safety at the time they seized the firearm. (Def.'s Objections 3.) Defendant explains that the evidence establishes that the officers were in control of the situation, with Defendant cuffed and sitting on the floor, prior to the seizure. (Id.) Moreover, there was no indication at the time of the seizure that the officers had any belief that Defendant was a felon or that a crime was being committed. (Id.)

Under the search incident to arrest exception, officers are permitted to search the arrestee's person and the area within his immediate control for weapons and evidence. Chimel v. California, 395 U.S. 752, 763 (1969). So long as the defendant had the item within his immediate control near the time of his arrest, the item remains subject to a search incident to arrest even after defendant is restrained. United States v. Romero, 452 F.3d 610, 619-20 (6th Cir. 2006) A search for weapons is a vital purpose of the search incident to arrest doctrine and is important to the officers' personal safety. United States v. Murrie, 534 F.2d 695, 697 (6th Cir. 1976).

The Fourth Amendment also permits officers to seize any item in plain view if they are lawfully present in the area and the incriminating nature of the item is immediately apparent. Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971). Though the incriminating nature of a firearm may not be immediately apparent, the Sixth Circuit permits police seizure of a weapon based on an officer's reasonable belief that the seizure was necessary to protect the officer's safety. United States v. Bishop, 338 F.3d 623 (6th Cir. 2003).

The Court rejects Defendant's objection and adopts the Magistrate's conclusion that, out of concern for their safety, the officers were justified in seizing the firearm under either the search incident to arrest exception or the plain view doctrine. The evidence established that Officer Fisher had information that Defendant was in possession of a gun prior to entering the residence. The officers observed a firearm, in plain view, protruding from under a pillow on the bed where Defendant had been sleeping. When Officer Montgomery went to detain Defendant, Officer Fisher seized the weapon. The Defendant was still in the room where the gun was located at the time Officer Fisher seized the firearm. Officer Montgomery's purported control of the situation at the time of the Defendant's arrest was no guarantee that the safety of the officers could not be compromised by the Defendant's actions if

he tried to gain control of the weapon. Therefore, the officers were justified in seizing the firearm. Accordingly, the Court DENIES Defendant's motion to suppress the firearm.

**IV. CONCLUSION**

For the foregoing reasons, upon <u>de novo</u> review, the Court ADOPTS IN PART and OVERRULES IN PART the Magistrate Judge's Report and Recommendation. Defendant's Motion to Suppress is DENIED.

**IT IS SO ORDERED,** this 14th day of December, 2010.

<pre>                         /s/ JON PHIPPS McCALLA
                         CHIEF UNITED STATES DISTRICT JUDGE</pre>